2021R00482/DKC/MPP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** JKB 22 cr 146 |
| **v.** | |
| | **(Healthcare Fraud, 18 U.S.C. § 1347;** |
| | **Aiding & Abetting, 18 U.S.C. § 2;** |
| **RON K. ELFENBEIN,** | **Forfeiture, 18 U.S.C. § 982, 21 U.S.C. §** |
| | **853(p), and 28 U.S.C. § 2461(c))** |
| **Defendant.** | |

## INDICTMENT

The Grand Jury charges that:

USDC- BALTIMORE
'22 APR 19 PM12:32

### COUNTS 1-3
### Health Care Fraud
### (18 U.S.C. § 1347)

At all times material to this Indictment:

### The Defendant and Relevant Entities

1.      Defendant **RON K. ELFENBEIN**, a resident of Anne Arundel County, Maryland,

was a physician, owner, and the medical director of Drs ERgent Care, LLC.

2.      Drs ERgent Care, LLC, d/b/a First Call Medical Center and Chesapeake ERgent

Care (hereinafter "Drs ERgent Care"), was a Maryland limited liability company that operated

medical clinics in Gambrills, Maryland, in the District of Maryland, and elsewhere.   Drs ERgent

Care operated COVID-19 testing sites, including drive-through testing sites, in Anne Arundel and

Prince George's Counties, including a location in Earleigh Heights, Maryland.

### Medicare Program

3.      The Medicare Program ("Medicare") was a federally funded program that provided

free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and

1

2021R00482/DKC/MPP

disabled.    The benefits available under Medicare were governed by federal statutes and regulations.    The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.    Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

4.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

5.      Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B covered medically necessary physician office services and outpatient care, including laboratory tests.

6.      Physicians, clinics, laboratories, and other health care providers (collectively, "providers") that provided items and services to Medicare beneficiaries were able to apply for and obtain a "provider number."    Providers that received a Medicare provider number were able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

7.      When seeking reimbursement from Medicare for provided benefits, services, or items, providers submitted the cost of the benefit, service, or item provided together with a description and the appropriate "procedure code," as set forth in the Current Procedural Terminology ("CPT") Manual or the Healthcare Common Procedure Coding System ("HCPCS"). Additionally, claims submitted to Medicare seeking reimbursement were required to include: (i)

2

2021R00482/DKC/MPP

the beneficiary's name and Health Insurance Claim Number ("HICN"); (ii) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (iii) the name of the provider, as well as the provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). Claims seeking reimbursement from Medicare were able to be submitted in hard copy or electronically.

8.      In 2020, evaluation and management services (sometimes referred to as "E/M Services" or "office visits") were billed using CPT codes 99201 through 99205 for new patients, and 99211 through 99215 for existing patients.    In 2021, CPT code 99201 was deleted, and E/M Services were billed using CPT codes 99202 through 99205 for new patients, and 99211 through 99215 for existing patients.    The code that providers were required to bill for E/M Services were organized into various categories and levels.    In general, the more complex the visit, the higher the level of code a provider could bill within the appropriate category.    To bill any code, the services furnished must have met the definition of the code, been medically necessary, and occurred as represented.

9.      The 2020 code description for CPT code 99204 was: "[o]ffice or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components: A comprehensive history; A comprehensive examination; Medical decision making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Typically, 45 minutes are spent face-to-face with the patient and/or family."    The 2021

3

2021R00482/DKC/MPP

code description for CPT code 99204 was: "Office or other outpatient visit for the evaluation and management of a new patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When using time for code selection, 45-59 minutes of total time is spent on the date of the encounter."

10.     The 2020 code description for CPT code 99214 was: "Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: A detailed history; A detailed examination; Medical decision making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Typically, 25 minutes are spent face-to-face with the patient and/or family." The 2021 code description for CPT code 99214 was: "Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When using time for code selection, 30-39 minutes of total time is spent on the date of the encounter."

## Part B Coverage and Regulations

11.     CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographical area, including determining whether the claim was for a covered service.

4

2021R00482/DKC/MPP

Novitas Solutions, Inc., was the MAC that covered, among other locations, Maryland.

12.     To receive Medicare reimbursement, providers had to make appropriate application to the MAC and execute a written provider agreement.   The Medicare provider enrollment application, CMS Form 855B, was required to be signed by an authorized representative of the provider.   CMS Form 855B contained a certification that stated:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to this supplier.   The Medicare laws, regulations, and program instructions are available through the Medicare contractor.   I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

13.     CMS Form 855B contained additional certifications that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [] will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

14.     Payments under Medicare Part B were often made directly to the health care provider rather than to the patient or beneficiary.   Medicare paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented, and actually provided as represented.

## The Scheme to Defraud

15.     From in or around March 2020, and continuing through in or around December 2021, in the District of Maryland, the defendant, **RON K. ELFENBEIN**, aided and abetted by

5

2021R00482/DKC/MPP

others, and aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute and attempt to execute a scheme to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain and attempt to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in violation of Title 18, United States Code, Section 1347 and 2 (hereinafter the "scheme to defraud").

## Purpose of the Scheme to Defraud

16.    It was a purpose of the scheme to defraud for the defendant, **RON K. ELFENBEIN**, to unlawfully enrich himself and others by: (a) submitting and causing the submission of false and fraudulent claims to Medicare for E/M Services during the COVID-19 pandemic that were medically unnecessary, not provided as represented, and ineligible for reimbursement; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds of the fraud; and (c) using proceeds of the fraud for the personal use and benefit of the defendant and others.

## Manner and Means of the Scheme to Defraud

17.    The manner and means by which the defendant, **RON K. ELFENBEIN**, and others known and unknown to the Grand Jury sought to accomplish the objects and purpose of the scheme to defraud included, among other things:

      a.    **RON K. ELFENBEIN** controlled, operated, and directed Drs ERgent Care.

6

2021R00482/DKC/MPP

    b.  **RON K. ELFENBEIN** submitted and caused the submission of enrollment documents to Medicare for Drs ERgent Care, in which he attested he would "not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [] will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

    c.  **RON K. ELFENBEIN** caused Drs ERgent Care to offer COVID-19 testing to members of the public, as the effects of the COVID-19 pandemic were felt in the United States and many individuals were reporting difficulty obtaining tests to determine whether they were infected with the COVID-19 virus.

    d.  **RON K. ELFENBEIN**, through Drs ERgent Care, offered COVID-19 testing, but required that the COVID-19 tests and the reporting of results be bundled, i.e., required to be billed in combination with more lucrative, but medically unnecessary, services, such as E/M Services, that were purportedly of a 30-minute or longer duration, or involving moderate or high levels of medical decision making, but did not in fact occur as represented.

    e.  **RON K. ELFENBEIN** instructed providers and other employees of Drs ERgent Care to submit claims to Medicare for these lucrative E/M Services knowing that some or all of the beneficiaries were being seen by providers for less than five minutes total.   Nevertheless, **RON K. ELFENBEIN** instructed providers and other employees to bill the encounters as moderate complexity E/M Services even though such encounters did not occur as represented.

2021R00482/DKC/MPP

    f.  **RON K. ELFENBEIN** instructed providers and other employees of Drs ERgent Care to submit claims for these lucrative E/M Services because the higher complexity E/M Services were "the 'bread and butter' of how we get paid . . . a 99202 pays way less than a 99204."

    g.  **RON K. ELFENBEIN**, through Drs ERgent Care, submitted and caused the submission of claims to Medicare and other insurers for E/M Services that were medically unnecessary, not provided as represented, and ineligible for reimbursement in excess of the approximate amount of $1.5 million.

### The Charges

18.    On or about the dates set forth as to each count below, in the District of Maryland, the defendant,

**RON K. ELFENBEIN,**

aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme to defraud as described above, submitted and caused the submission of the following false and fraudulent claims to Medicare for E/M Services that were medically unnecessary, not provided as represented, and ineligible for reimbursement, each submission constituting a separate count:

| Count | Medicare Beneficiary | Date of Submission of Claim | Date of Service | Claim No. | Procedure Code; Amount Billed |
|-------|----------------------|------------------------------|-----------------|-----------|-------------------------------|
| 1 | A.H. | 03/29/2021 | 03/25/2021 | 691021088249240 | CPT 99204 $354.22 |
| 2 | W.R. | 05/03/2021 | 04/23/2021 | 691021123406780 | CPT 99204 $354.22 |

8

2021R00482/DKC/MPP

| Count | Medicare Beneficiary | Date of Submission of Claim | Date of Service | Claim No. | Procedure Code; Amount Billed |
|---|---|---|---|---|---|
| 3 | D.M. | 05/12/2021 | 05/10/2021 | 691021132127230 | CPT 99204 $354.22 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

2021R00482/DKC/MPP

## FORFEITURE ALLEGATION
### (18 U.S.C. § 982, 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on any of the offenses charged in this Indictment.

2.      Upon conviction of any of the offenses set forth in this Indictment, the defendant, **RON K. ELFENBEIN**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

### Substitute Assets

3.      If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. §

10

2021R00482/DKC/MPP

853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

Erek Barron /mpp

Erek L. Barron
United States Attorney
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201


JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

D. KEITH CLOUSER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
(202) 256-0867


A TRUE BILL:

SIGNATURE REDACTED

Foreperson


4/19/2022
Date


11