UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA,**

v.                          CASE NO. 1:22-CR-00146-JKB

**RON K. ELFENBEIN,**

         **Defendant.**

_____/

## UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*

The United States of America, through undersigned counsel, moves *in limine* for rulings on certain evidentiary issues that are likely to arise during the trial of Defendant Ron Elfenbein.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

On January 11, 2023, Defendant was charged in a Superseding Indictment with five counts of execution of a health care fraud scheme, in violation of 18 U.S.C. § 1347. [*See* ECF No. 29]. For approximately one and a half years, Defendant caused Medicare and other insurers to be fraudulently billed approximately $30 million, of which approximately $10 million was paid.

The Superseding Indictment alleges that Defendant was an owner and the medical director of Drs ERgent Care, an urgent care clinic in Maryland that provided drive-through COVID-19 testing. In addition to billing individuals' insurance for COVID-19 tests, Defendant required that the COVID-19 tests and reporting of results be bundled with more lucrative, but medically

---

[1] This Section outlines what the Government expects the evidence will show at trial. The Government expects to prove its case through, among other evidence, the testimony of former employees of the Defendant's urgent care clinic, individuals who obtained COVID-19 tests at the Defendant's clinic, a Medicare program witness, a CareFirst BlueCross BlueShield witness, a summary witness, other witnesses, and documents, including e-mails, Medicare records, billing data, and summary exhibits.

unnecessary, evaluation and management services that were not provided as represented. That is, the insurance carrier of nearly every patient who came to Defendant's clinic for a COVID-19 test was also billed for an evaluation and management visit of purportedly 30 or more minutes in duration or involving moderate or high levels of medical decision making. Rather than providing such evaluation and management visits, Defendant instructed providers that patients were there only to be tested, that the providers were not there to address complex medical issues, and that patients should be seen in five minutes or less. Defendant nevertheless instructed the providers to bill for high-level office visits.

## **LEGAL STANDARD**

The Government's motions are based on the familiar principles of evidence set forth in the Federal Rules of Evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. In the Fourth Circuit, to meet the relevance standard, "evidence need only be 'worth consideration by the jury,' or have a 'plus value.'" *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997)). Relevant evidence may be excluded if its probative value is "substantially outweighed by a danger of" unfair prejudice, confusing the issues, or misleading the jury, among other bases for exclusion. Fed. R. Evid. 403.

## **EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

**I.     EVIDENCE OR ARGUMENT BLAMING THE VICTIMS FOR PAYING CLAIMS SUBMITTED BY DEFENDANT OR FAILING TO DISCOVER THE FRAUD SHOULD BE EXCLUDED.**

The United States moves *in limine* to preclude Defendant from arguing, offering evidence, or eliciting on direct or cross-examination any "blame the victim" defenses that because Medicare

and other insurers paid the claims submitted by and through Drs ERgent Care, Defendant could not have defrauded Medicare and other insurers, or known that the claims were fraudulent. Such evidence is irrelevant, improperly blames victims of the fraud, and would mislead the jury.

It is well established that a victim's failure to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. *See United States v. Blair*, 2021 WL 5040334, *36 (D. Md. Oct. 29, 2021) (quoting *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000)) (rejecting proposed testimony that insurer failed to follow its own regulations by paying the claims at issue).[2]

This concept holds true throughout criminal law. Bank robbers are not absolved of their crimes if the bank security systems are deficient; home invaders are not absolved if homeowners leave a key under the mat; and individuals who perpetrate Ponzi schemes are not innocent if their clients include sophisticated Wall Street brokers.

Defendant cannot point his finger at insurers to excuse his own conduct. The Fourth Circuit in *Colton* made this clear. Following conviction for bank fraud, the defendant in that case argued that the lenders failed to request certain details prior to entering into the at-issue financial agreement. 231 F.3d at 894. The Fourth Circuit rejected the argument, explaining:

> The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: "If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980); *see also Neder*, 527 U.S. at 24-25, 119 S. Ct. 1827 (holding that "reliance" and "damages" are not necessary elements of an offense under the

---

[2] *See also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) (negligence of victim in failing to discover fraud scheme is not a defense to criminal conduct); *United States v. Thomas*, 377 F.3d 232, 242–44 (2d Cir. 2004) (same) (collecting cases); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("[A] victim's lack of sophistication is not relevant to the intent element of mail or wire fraud.") (collecting cases).

> federal fraud statutes); *United States v. Stewart*, 872 F.2d 957, 960 (10th Cir. 1989) (same); [Stuart M.] Speiser et al., [9 The American Law of Torts] § 32.73 ("[T]he rule that fraud cannot be predicated on a failure to disclose facts where ... the truth may be ascertained by the exercise of reasonable diligence does not justify a resort to active deceit or fraud.").

*Id.* at 903.

In *Blair*, the United States District Court for the District of Maryland applied these principles to health care fraud when it considered whether expert testimony about an insurer's purported failure to follow its own rules in paying claims should be admitted. 2021 WL 5040334, at *36. The Court rejected the testimony, explaining that "it is of no moment if [the insurer] failed to follow a particular requirement." *Id.* "The adage, two wrongs do not make a right, seems apt. That [the insurer] may have paid a claim erroneously would hardly justify the alleged conduct at issue. Nor is it a basis for the proposed testimony." *Id.*; *see also United States v. Gaver*, 2018 WL 3475455, *2 (D. Md. July 19, 2018) ("Given the elements of bank fraud and the test for materiality, the Fourth Circuit has held that evidence of a fraud victim's negligence or lack of diligence is not a defense to bank fraud.").

Following the Fourth Circuit in *Colton*, and various other circuit courts, this Court should exclude any discussion of the insurers' purported failure to discover Defendant's fraud. Even if Medicare and the other insurers were at fault—which they were not—such evidence would still be irrelevant, improper, and no defense to the charged scheme.

In addition to being irrelevant, evidence concerning the insurers' conduct would be prejudicial under Rule 403. Allowing Defendant to argue that Medicare and other insurers were negligent in paying the claims at issue, or in failing to discover the fraud sooner, and that this somehow excuses Defendant's criminal conduct, would mislead the jury. Allowing evidence about such conduct to come before the jury could create the erroneous impression that in order to

4

find Defendant guilty, the jury must find that Medicare and the other insurers could not have discovered Defendant's misconduct. Because that is not necessary under the law, Defendant should not be allowed to create such improper inferences.

Thus, the Court should preclude Defendant from introducing any such "blame the victim" defense. Defendant should not be permitted to argue that anyone *should* or *could* have discovered his fraud and denied his claims; or that Medicare and other insurers did discover his fraud and somehow blessed it by paying claims. Likewise, Defendant should not be permitted to assert that insurers' payment of fraudulent claims led Defendant to believe that his conduct was somehow legitimate or lawful.

## II.     EVIDENCE OR ARGUMENT REGARDING THE GOVERNMENT'S DECISION NOT TO CALL AN INDIVIDUAL TO TESTIFY SHOULD BE EXCLUDED AS IRRELEVANT.

The United States seeks a ruling *in limine* precluding Defendant from commenting on or asking the jury to draw any negative inference from the Government's decision not to call a particular individual to testify. Where there is no showing that a witness is not "equally available" to both the Government and a defendant, "no unfavorable inference arises from the government's failure to call him." *United States v. Chase*, 372 F.3d 453, 467 (4th Cir. 1967); *see also United States v. Rukaj*, 23 F.3d 404, *3 (discussing standard for missing witness instruction); *United States v. Brooks*, 928 F.2d 1403, 1412 (4th Cir. 1991) (same). Here, the Government's witness list contains a number of names and the investigation of this matter involved numerous witness interviews. The Government does not intend to call every conceivable witness, and Defendant has the power to subpoena his own witnesses. *See United States v. Green*, 69 F. App'x 612, 614 (4th Cir. 2003) (contested witnesses were equally available to defendant and government because defendant "could have subpoenaed them to appear and examine them at trial but did not do so").

5

## III. EVIDENCE OR ARGUMENT REGARDING SPECULATION ABOUT THE REASONS FOR PROVIDING EVALUATION AND MANAGEMENT SERVICES TO COVID-19 TESTING PATIENTS SHOULD BE EXCLUDED.

The United States seeks a ruling *in limine* precluding Defendant from introducing expert testimony speculating about Defendant's subjective intent regarding his instruction to providers to include a level 4 evaluation and management office visit billing code for virtually all COVID-19 testing patients. Federal Rule of Evidence 704(b) prohibits experts in criminal cases from testifying "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Thus, "expert testimony regarding a defendant's 'subjective intent in pursuing a particular activity,' or expert testimony 'that a defendant had an *actual* thought or intent,' is prohibited." *United States v. Mosby*, 626 F. Supp. 3d 847, 857-58 (D. Md. 2022).

The evidence in the case will show that Defendant instructed providers working for him to code COVID-19 tests with an additional level 4 evaluation and management visit for all COVID-19 testing patients who presented at one of Drs ERgent Care's testing locations for a COVID-19 test, and instructed the providers what to include in the medical charts in an attempt to justify that level of coding. Simultaneously, Defendant instructed providers that the patients should be seen in five minutes or less, that the providers were not there to solve complex medical issues, and that the patients were just there to be tested.

Nevertheless, Defendant has noticed two experts, Dr. Hugh Hill and Michael Miscoe, who are expected to testify about reasons that the coding used by Defendant and his company may have been justified. For example, Dr. Hill is expected to testify that "it was medically necessary for a provider to perform evaluation and management services when a patient presented for COVID-19 testing, even if asymptomatic" and "will describe the E/M services necessary for such patients."

Defendant's Expert Disclosure dated June 14, 2023, at 4. Similarly, Mr. Miscoe will testify regarding the "subjective determinations" a provider makes "to determine the applicable level for E/M services." *Id.* at 2-3. This testimony does not shed light on Defendant's intent—he determined the codes to be billed long before the patients presented to Drs ERgent Care for a COVID-19 test. Instead, they solely provide ex post facto justification for Defendant's conduct.[3]

Defendant's experts cannot testify as to Dr. Elfenbein's actual intent or reasoning for instructing providers to add a level 4 evaluation and management office visit code for every COVID-19 testing patient. Fed. R. Evid. 704(b); *see Mosby*, 626 F. Supp. 3d at 857-58. Nor should Defendant's experts be permitted to speculate as to possible motives that Dr. Elfenbein might have had regarding the bases for the billing codes he instructed Drs ERgent Care providers to select. Not only would such testimony be entirely speculative, and thus improper, its prejudicial effect substantially outweighs any probative value. Fed. R. Evid. 403. Permitting defense experts to provide theoretical, after-the-fact justifications for the billing codes used that are not tethered to evidence of Dr. Elfenbein's actual intent would be misleading and unfairly prejudicial because the jury could confuse the expert's testimony about what Dr. Elfenbein *could* have been thinking as evidence of what Dr. Elfenbein was *actually* thinking.

To be clear, the Government does not suggest that Defendant cannot argue the claims are not, in fact, false. The Government does not object to the defense experts describing the rules and requirements to bill for certain billing codes, including the evaluation and management codes at

---

[3] This is different in kind from evidence the Government intends to introduce from CareFirst BlueCross BlueShield regarding its review of medical records in connection with an audit conducted, the results of which were reported by CareFirst during the relevant time period. That evidence is relevant to Defendant's state of mind because it was available to him during the execution of the scheme.

issue in this case, or opining whether the services actually provided support the codes billed. Nor does the Government object to Defendant himself testifying as to his reasons for instructing providers to bill level 4 evaluation and management visits. But Defendant should not be permitted to introduce expert testimony speculating about why a provider *might* have selected a specific billing code for a COVID-19 test patient. Thus, the government moves to preclude Defendant from eliciting such testimony from his experts.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court grant its Omnibus Motion *in limine* in its entirety.

Respectfully Submitted,

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

EREK L. BARRON
UNITED STATES ATTORNEY

/s/
Matthew P. Phelps
Assistant United States Attorney

D. Keith Clouser
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
david.clouser@usdoj.gov

COUNSEL FOR THE UNITED STATES