IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-22-0146 |
| RON K. ELFENBEIN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Pending before the Court are Motions *in Limine* filed by Defendant Ron Elfenbein (ECF No. 37) and the Government (ECF No. 38). The Court has reviewed the record and is prepared to rule on these motions. It is ORDERED that:

1. Dr. Elfenbein's Motion *in Limine* to Exclude the Government's Summary Exhibits (ECF No. 37) is DENIED IN PART AND GRANTED IN PART.

   a. Dr. Elfenbein's request to exclude summary exhibits with "inaccurate definitions" of billing codes (ECF No. 37 at 4-14) is GRANTED IN PART. Assuming the summary charts at issue replicate the language used in underlying Medicare claims data, such language would likely meet the "accuracy" requirements of Fed. R. Evid. 1006. *See United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004). But the discrepancy between the billing descriptions used in the Government's summary charts and the American Medical Association's CPT Code Manuals risks confusing the issues and misleading the jury. These dangers significantly outweigh the probative value of introducing abbreviated billing descriptions in a summary chart. *See* Fed. R. Evid. 403. If the Government wishes to retain the descriptions at issue

1

in GX102, GX104, GX105, GX106, the Government is ORDERED to include prominently featured parentheticals providing the American Medical Association's descriptions of the relevant CPT codes in those exhibits.

b. Dr. Elfenbein's request to exclude summary exhibits that "aggregate allegedly fraudulent claims with uncharged, non-fraudulent claims" (ECF No. 37 at 14-19) is DENIED.    The exhibits identified by Dr. Elfenbein are not facially misleading. Evidence concerning the universe of Dr. Elfenbein's transactions during the relevant time period is sufficiently probative of the charged scheme to permit the jury to consider the uncharged conduct in dispute.    For example, the proportion of Dr. Elfenbein's allegedly fraudulent claims compared to non-fraudulent claims could help the jury determine whether the disputed submissions were mere accidents or whether there was an ongoing scheme to defraud.

c. Dr. Elfenbein's request to exclude summary exhibits that display the "amount billed" in addition to the "actual amount paid" (ECF No. 37 at 19-23) is DENIED. The Government is permitted to introduce evidence of the amount Dr. Elfenbein submitted to insurers.   Cross-examination will undoubtably mitigate any risk that such evidence would confuse the jury or unfairly prejudice Dr. Elfenbein.

d. Dr. Elfenbein's request to exclude GX135, the Government's chart summarizing Dr. Elfenbein's tax returns (ECF No. 37 at 23-25), is DENIED.   While the Court is not convinced this exhibit is highly relevant, it is at least minimally probative of Dr. Elfenbein's motive and intent.   *See United States v. Bajoghli*, 785 F.3d 957, 966 (4th Cir. 2015) ("[E]vidence of financial gain is particularly probative in a fraud case to establish the defendant's intent to defraud."); *see also United States v. Shah*,

2

Crim. No. MJG-16-0430, 2018 WL 835718, at *2 (D. Md. Feb. 13, 2018) (admitting into evidence tax returns where defendant was "charged with a financial crime (i.e., wire fraud), which naturally raises issues involving how the proceeds of that crime are accounted for on tax returns").

2. The Government's Omnibus Motion *in Limine* (ECF No. 38) is DENIED:

    a. The Government's request to preclude argument or evidence relating to "any 'blame the victim' defenses" (ECF No. 38 at 2–5) is DENIED WITHOUT PREJUDICE. The Government argues that it would be improper to argue "that because Medicare and other insurers paid the claims submitted by and through Drs ERgent Care, Defendant could not have defrauded Medicare and other insurers, or known that the claims were fraudulent." (ECF No. 38 at 2–3.) Dr. Elfenbein represents that he does not intend to "argue that insurers' failure to discover the alleged fraud absolves him of criminal liability," (ECF No. 39 at 1), and indeed such an argument would be improper. *See United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000); *United States v. Blair*, Crim. No. ELH-19-00410, 2021 WL 5040334, at *36 (D. Md. Oct. 29, 2021). Nevertheless, Dr. Elfenbein argues that he should be allowed to present evidence that insurers' conduct affected his subjective intent. (ECF No. 39 at 2.) The insurers' payment of the allegedly fraudulent claims, without more, would likely be inadmissible to show Dr. Elfenbein's intent. *United States v. Brown,* 820 F. App'x 191, 197 (4th Cir. 2020) ("A victim's perception of the scheme to defraud is irrelevant to whether the defendant intended to defraud the victim." (citing *Colton*, 231 F.3d at 903)); *see also United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("The majority of

circuits to address the issue have rejected this defense, holding that a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud"); *United States v. Udeokoro*, Crim. No. 17-629 (AMD), 2023 WL 4138477, at *7 (E.D.N.Y. June 22, 2023) ("[C]ourts in this district have precluded defendants from arguing that the payment of claims demonstrates a defendant's good faith and lack of intent."); *United States v. Schena*, Crim. No. 5:20-00425-EJD-1, 2022 WL 2910185, at *5 (N.D. Cal. July 23, 2022) ("By arguing that he lacked the requisite intent because the insurance companies continued to reimburse submitted claims, Defendant attempts to shift blame onto the victims of his alleged scheme[.]"). In certain circumstances, however, evidence of insurers' conduct could be relevant to Dr. Elfenbein's state of mind. *See, e.g., United States v. Golfo*, Crim. No. 19-00095(KAM), 2020 WL 2513445, at *5 (E.D.N.Y. May 15, 2020) ("On the other hand, defendant may be able to present evidence that Medicaid or other payors affirmatively instructed defendant to submit claims in a certain form, and that, defendant's good faith adherence to these instructions induced her to submit the allegedly fraudulent claims underpinning the government's case. If so, defendant could legitimately argue her intent to defraud was negated."). A comprehensive determination on this issue would be premature, as it depends on the specific evidence or argument and the context in which it will be offered at trial. Accordingly, Mr. Elfenbein SHALL WARN both the Court and the Government prior to placing any such evidence before the jury.

b. The Government's request to preclude evidence or argument regarding its decision not to call an individual to testify (ECF No. 38 at 5) is DENIED WITHOUT

4

PREJUDICE, subject to reconsideration on motion by the Government at trial. Such a determination will depend on the particular circumstances surrounding a missing witness, and is therefore not yet ripe for decision.

c. The Government's request to preclude expert testimony speculating about Dr. Elfenbein's subjective intent in assigning CPT codes for COVID-19 testing services (ECF No. 38 at 6–8) is DENIED WITHOUT PREJUDICE, subject to reconsideration on motion by the Government if and when Dr. Elfenbein seeks to present such evidence at trial. Given the allegations charged in the Superseding Indictment (ECF No. 29), the Court can envision a scenario where expertise would be helpful in discerning the facts that occurred, such as whether particular conduct fit within a particular CPT code. However, such testimony could be problematic under Fed. R. Evid. 704(b) if it wades into speculation or opinion about why Dr. Elfenbein did what he did, even if couched in more general terms of what doctors generally do when making these determinations. Again, determination of this issue will depend on the specific testimony and context at trial and is therefore not ripe for disposition at this time.

It is SO ORDERED.

Dated this ___6___ day of July, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

5